May it please the Court, I am Damon Ott of Littler Mendelsohn here in San Francisco. Presenting Express Messenger Systems, Inc., DBA on track. I imagine your honors are very familiar with cases of this kind. This is an appeal on a denial of a motion to compel arbitration, which is appeal by right. So I suspect you hear many of these. This case does involve facts that are slightly different than the norm. Two elements in particular, which we have highlighted in the briefing, but I think it's critical to identify at the outset of this case. The provision that is at issue here, the contract for arbitration, is actually between the plaintiffs and a third party that is not a party to this case, named Subcontracting Concepts, or SCI, and it is a commercial contract. Contract is entered into, or was entered into by the plaintiffs with SCI to establish a relationship that would allow them to contract to perform motor carrier services for other companies, which they then did, including companies that on track subcontracted service to. So there are three different parties here that could be relevant in addition to SCI that has this contract. That is significant because it makes very clear that this is a commercial contract, not a contract of employment, and therefore that changes the analysis and the standards that should be applied, and that, I believe, is where the court, the district court, went wrong. Counsel, I have a question about that aspect of the case. There seem to be a number of district court's cases saying that this agreement applies and is enforceable in this context. Are there any circuit court cases, one way or the other, on the applicability of the arbitration agreement, or the nature of it? Are you referring to the third party beneficiary aspect, Your Honor, or? Yes. That issue is, I believe, squarely addressed under Arizona law, if that's the question. And I should maybe start by pointing out that this is a situation where all the parties and the district court agreed that the enforceability would be reviewed under Arizona law. And under Arizona law, for the third party beneficiary, the case law, which the district court did find applicable, was with the Two Brothers Distributing case and the Nahum v. Blue Cross case, which both found that if you're an intended beneficiary, then you can enforce under the third party beneficiary standard. The same provision actually has been enforced in California and the third party beneficiary standard under California law, as well. But back to the point that I was raising, the standard has to be evaluated under Arizona contract law. And it is the Arizona Supreme Court that has established the standard in determining whether a contract for arbitration is enforceable, which it did in the Maxwell case, in one instance in 1995. Where it very explicitly stated that when determining whether in light of the general needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Here, the district court erred by applying the analysis, really, that the plaintiffs have proffered, which is, let's look at what these claims asserted are. They are employment claims. They are against OnTrack. They are claiming that they've been misclassified as independent contractors under Federal, the Fair Labor Standards Act, as well as the Arizona law. That is not the circumstances that existed at the time of formation. What existed at the time was they were entering, plaintiffs entering into a contract with the third party company SCI to create this commercial relationship. The contract itself specifically stated that it was for that purpose and for them to provide services as independent contractor owner-operators, and specifically contains a clause that states that it is not intended and does not create a relationship of employment. And therefore, at the time of formation, there was no contemplation, in fact, quite the opposite contemplation, that this would be applicable to employment law claims. And so looking at this agreement in that light, it seems very clear that none of the provisions that the — or none of the three provisions, I should point out, that the district court takes issue with are problematic, actually, at all, because they are completely normal within the context of a commercial agreement like the one here. Now, there wasn't a direct contract between your clients and the workers, right? Was there a direct contract? There was not. There was not a service contract. There was a small ancillary agreement relating to marketing, but nothing relating to the services. That's correct. And who paid their wages? Well, this is because it was an independent contractor arrangement. There were not wages paid. There were settlement amounts paid for the contracted services, and those amounts were paid by the entity, the regional service provider that they contracted with. That was facilitated by SCI, and SCI performed a payment processing function, so the regional service provider would use SCI, similar to a company using ADP, to pay the money, and that's why that contract is relevant to this entire arrangement. But it was actually — it was not on track that it was paying for the services. But the arrangement now is different than it was when the original transaction involving these people took place? Is that — is that — there's a change? Is that what you're saying? I'm not saying that the arrangement has changed. I'm saying now that the allegations of the parties, the plaintiffs, they're claiming that it's changed. They're saying that I really was treated as an employee by OnTrack. Well, first of all, again, OnTrack didn't enter into this contract. Secondly, OnTrack did not pay for their services and did not have a direct relationship with them. So the contract really should be evaluated for its enforceability under the context in which they formed the contract. The — getting to the points which we have briefed but that the district court took issue with, just quickly to point out, you know, the first is that the agreement provided for monetary damages but did not allow punitive damages. First, punitive damages are not allowed in wage and hour cases, which in this case the claims all do involve. The district court found that this — if interpreted, it could preclude treble damages under the Arizona statute. But treble damages being monetary, that's really an issue of interpretation. So it's very well conceivable that this actually would have been permitted. Secondly, Arizona law specifically allows, the Supreme Court has found, allows for the parties to waive by contract the right to treble damages under Arizona statute 23-355, which is the basis that the court found problematic. But isn't — counsel, isn't that kind of circular? Because if the plaintiffs win on the merits, they would be establishing that they are employees who would be entitled to punitive damages and treble damages. So I'm not really quite sure how that bears on the — bear arbitrability. You have to be able to assume for arbitrability that either side could succeed on the merits. Well, I think the first thing to recognize is that the intent of interpretation here is to give effect to the party's intent when they entered into the contract. So I think that there it was reasonable for them to enter a contract that did not provide for punitive damages because their intent was to create a different kind of relationship. Now that they are claiming a different relationship existed, if — even if the court does take issue with that provision because this is now being evaluated in a different context, the court really should, which I'll get to, it should sever that provision with the understanding that really to effectuate — Yeah, that's actually a question that I have for both counsel to address. The district court really didn't explain anything about not severing it, just sort of said in a conclusory fashion, there's three things wrong and it's really bad and so you're done. It doesn't really explain why severance isn't appropriate and available because it seems to me that it would be quite easy to say, well, if the employees win, they get trouble damages and attorney fees and so on and so forth. I don't really understand the non-severance. And, Your Honor, I think that is the exact point that really we do end up looking at, that it's — if these provisions are found problematic, which, again, I don't actually believe that they are, but in this new context, assume that they are, the court does fail to apply the proper severability analysis because these are ideas that the parties agreed upon at the time, circumstances in the plaintiff's clients have changed, and, therefore, there should not be — the burden should not be on SEI or the third-party beneficiary, should not suffer the consequence of their changed circumstance. So if they are now saying, well, we believe that the circumstance is different, then the contract should be modified by severing those provisions to be in accord with the new perspective that they hold. So, really, it's something that, first, we don't believe severability is even required here because we think that these are lawful, conscionable provisions. But if not, it's really on the plaintiffs because they've changed their perspective of this agreement that they willfully entered into. Well, it isn't a matter of who it's on. My concern is that the district court didn't really give, to my way of thinking, any sort of real explanation, just a conclusion. And I think that's right, Your Honor. The point that I was driving at that I think I failed to reach there, which is that the contract for arbitration can still be — the purpose of it, the intent of the parties can still be achieved even with those provisions severed because, first of all, there are only three items of multiple items, all of which are mutual, all of which are extremely fair. So, first, there's only three amongst many provisions that the Court found or took issue with. Secondly, they can be severed without really materially changing the contract. And the Court does not go through the proper analysis, which says severability is fine. The cases that look at interpreting contracts of this kind have more of a problem where contracts have to be rewritten or where clauses have to be added. Here, all that would need to be removed are certain provisions, or even not even to be consistent now with the plaintiff's new perspective. It would be very simple, and certainly those changes would not alter the fundamental intent of the parties or purpose of the contract. And I know I didn't mention this at the outset. I was going to reserve time. You were going to reserve your time. And I would like to. Thank you, Your Honor. Thank you. May it please the Court. My name is Harold Licton. I represent the plaintiffs. First of all, there was no change of perspective of what the plaintiffs did. These individuals are individuals. They drive cars. They answer ads. And the ad says, if you want to deliver on a route, you can come and deliver for us and we'll pay you money. And they are paid by who? They are paid by SCI pays the third-party administrator, SCI, who then, in turn, pays the individuals. It has every aspect of an employment relationship. They drive for years at a time, as you can see by the declarations. They drive the route. They're paid. They have to call the dispatchers. It has all the elements of employment. And SCI has been involved in litigation around the country on these employment relationships, as has OnTrack for years. And so there's no surprise here. And given the state of the law and the decisions both in California and It has all the elements of an employment relationship. So there's no change in perspective by the plaintiffs. They were told that if they are going to drive for OnTrack, they had to sign this agreement with SCI. And it had these provisions that they had no choice over. Now, with respect to the decision to sever or not sever. That was the whole ‑‑ that was the system at all material times. At all material times. It's never changed. I do think the issue of severance is probably the most important issue in this case. And I would point out. The court really doesn't explain it, except to cite a couple of cases that had a larger number of unconscionable provisions without describing what they were. And doesn't really explain why it wouldn't be quite a simple matter to excise the offending provisions and proceed with arbitration here. Well, I'd like to explain why, in fact, what the court did was entirely appropriate. First, Justice Roberts said when he was sitting on the D.C. Circuit, if illegality pervades the arbitration agreement such that only a fragment would remain after hacking away the unenforceable parts, the judicial effort begins to look more like rewriting the contract than fulfilling the intent of the parties. In the Farber case, which is the leading case in Arizona, and we look to the Arizona law to determine unconscionability, the court said, and I'm go further than cutting grammatically severable provisions. The court of appeals, in essence, rewrote the agreement in an attempt to make it enforceable. This goes too far. Quote, for every agreement that makes its way to court, many more do not. Thus, the words of the agreement have an interim effect. Employers may, therefore, create ominous covenants, knowing that if the words are challenged, courts will modify the agreement to make it enforceable. We will not permit courts to add or rewrite provisions. Now, this is what's important, Justice Graber. You have to look at this contract at the time it was entered into by the parties, and that's what Arizona law says. You look at unconscionability. Well, but, counsel, there is, as you know, a fairly strong federal policy in favor of arbitration. Whether we agree with it or not, that seems to be the message that we're getting. And these are not very complicated provisions. One says, you know, no treble damages, and you can say, okay, well, we'll just take that out, and you can get them if you win. And, you know, fees, you can get those if you win also. But that doesn't seem like, to me, that it sort of permeates the whole contract, and the Court doesn't really explain why she came to that conclusion. But it does, Your Honor, and this is why it does. The provisions, one, is a limitation on punitive damages. We've already discussed. There's a limitation on equitable damages, which Arizona law clearly permits for wage violations. It says that you cannot recover your attorney's fees. It says that you have to split the cost of a tripartite arbitration panel, each member having to have expertise in trucking and legal industry. There's no class allowed. And not to mention that it doesn't even mention the agreement that you would be receiving your right to bring wage claims to court. And they weren't a signatory. A contract's not a signatory. You have all these problems with it. Now, if you're looking at the cost. But those are not the problems that the district court identified. Well, it identified three of them, and it didn't get to the scope issue. Right, but it didn't make the finding that you're saying that it's more than three things, it's six or seven things. But that's not what the district court said as I read it. So the things that the district court relied on were all strictly monetary. They didn't have to do with whether it's a generally fair thing to do for people who work for other people. It had to do with can you get punitive damages or travel damages if you win? Can you get attorney fees if you win? And those are pretty straightforward things to fix, it seems to me. But, Your Honor, I must not be getting across the point. Because if, as Nesbitt says in the Tenth Circuit and the Arizona Supreme Court says, you have to look at this at the time the individual is making the determination as to whether it's worth the fight to take this to arbitration, they don't know that some years later a court may sever. It has an interim effect if at the time there are all these horrible provisions in the contract that make it costly, so costly that an individual like my client could never arbitrate that, and then a court says, well, we can sever this a year later when it comes to court. Thousands of people, as the Arizona Supreme Court said and as Nesbitt said in the Tenth Circuit, will never bring the case to begin with because you can't look at it at the time it's in court. People will never get to court. In addition to that, Your Honor, the question of whether or not to sever or enforce under both Arizona — sever or not enforce under both Arizona law and the law of the Ninth Circuit is it's an abuse of discretion. You can only reverse that abuse — reverse that decision if you find it was illogical or implausible. And the Court found three very serious concerns as to why this should not be enforced. These three monetary things taken together would be a death knell for anybody trying to bring this case. But more importantly — Well, you know, that's what we thought in Concepción, that if you can't bring the class — that was one of the reasons that the California Supreme Court in other cases held class action waivers unconscionable was because you couldn't ever succeed on individual claims. And — That's still good law, Your Honor. The Supreme Court has never said that if a provision is so difficult that someone could not even bring the claims because it would be so costly, you should not vindicate your statutory rights. It's not arbitrary. Has it said that? It has not said that. And in fact, based upon that, a number of courts, Zoborowski and others, have found that provisions like this are unconscionable and cannot be enforced. But I want to answer Justice Graber's question one more time, because you would be hacking away and making this provision nothing because there's no rules in this contract. It doesn't say the American arbitration rules apply or there's a waiver if someone can't pay. So if you take away the provisions, the very provisions you were just mentioning, the three provisions about the three-arbitrator panel and make that only one, if you take away the cost, if you take away the fee, if you're — Why would you take away the — excuse me, counsel. Why would you take away three arbitrators? That's not one of the things that the district court — it's the cost question. It's the money question, not the number of people. That's the problem. But the two go hand in hand because it's having three arbitrators and the cost of experts in trucking and law that all three would have. And so if you take away all those provisions because you find them — they go too far, you're left with nothing because there are no rules in this agreement. It doesn't mention the American arbitration rules. It doesn't mention how the arbitrator gets picked, who pays the fees. You would be — you would have to rewrite the whole contract. Well, it does tell you how to — excuse me, counsel. It does tell you how to pick the arbitrators. Each party picks one. Each party picks one. And the two that are chosen — this is quite standard — pick a third who shall be neutral. And if they don't agree within a certain amount of time, someone is picked in accordance with the American Arbitration Association. That's who picks it. So it does tell you that. I understand that you don't agree that it's appropriate, but I don't think it's fair to say that it doesn't explain that. Well, but you — but, Your Honor, you would then have to be rewriting the contract to say, okay, the employer is going to have to pay that, or you only have to pay for one arbitrator, or the arbitrator doesn't have to be an expert so it can be your friend. You would be rewriting the contract. There are no rules in the contract. Why would you rewrite that part? Why isn't it appropriate to have them be legally experienced and experienced in the industry? That is not one of the things the district court found unconscionable. And you're giving us a list of things that you think are unconscionable that are not part of the district court's decision, and that's my frustration with your argument because the district court had, as I read it, a fairly narrow explanation of the specific things that were not appropriate in this contract. And adding to the list doesn't really support the district court's conclusion that those things can't be severed. It's just a different argument. And that may be how you want to argue it, but it doesn't really support what the district court did. Well, the district court, again, pointed out the three most onerous provisions, which collectively made it so no one at the time they're deciding whether to bring this case would bring this case. Three arbitrators, and you have to pay half the cost, cost splitting for the And no injunctive relief, even though so you cannot cure the violation. And no punitive damages, so that would be no treble damages. Now, again, the decision whether or not to sever or enforce or not enforce is a question of discretion, and I think the Court reasonably exercised that discretion. And I don't think it was illogical or implausible and is consistent with decisions of this Court. Let me ask you a different question. If we were to disagree with you as to the correctness of the district court's ruling that the these provisions are unconscionable, do you have other arguments that your clients are not bound by the educational policy? Yes. And I do want to address that, and I think that's very important. And I think that you have the right, because it's fully brief, to address that here. And those are as follows. Under the recent Third Circuit decision in Moon v. Breathless and other decisions, it is not at all clear that there was a waiver of your right to bring statutory wage claims under Arizona and Federal law. This agreement is extremely poorly written. It talks about claims arising under the agreement or service arrangements with clients. Clients is never defined. We don't know what it is. So there's a very strong argument based on the recent Third Circuit decision in Moon v. Breathless. If you're going to make someone waive their right to go to court to enforce their statutory wage rights, you have to say so. This clearly does not. That would be grounds independent of this for not enforcing it. In addition to that, you have the question of a signatory. They are not a signatory to the agreement. They are not clearly defined. And the arbitration agreement says that if there's a dispute, the party's here, too. But as we pointed out in a recent filing, the parties here, too, connote two parties, not multiple parties. It would be impossible for my clients to know when they signed an agreement with SCI that they were agreeing not only to waive their rights to bring wage claims against on track, they just would not know it, Your Honor. Did we remand that to the district court to make that decision, or are we supposed to do that? I think you're allowed to do that. We've pointed out in our brief, and we've pointed out cases, and most recently in the Road decision, that's the strip club case, where you said that you can decide a question of arbitrability on any grounds as long as it was raised in the brief, even if it wasn't addressed by the lower court. And that we don't have to. Well, no, you don't have to. That's right. But I think based upon the recent Third Circuit decision and the decisions that have come down with respect to waiver of statutory rights and how someone has to know what it is that they're waiving or releasing, I think it would certainly be appropriate for you to do so. If there are no further questions, I thank you very much. No further questions. Thank you. Thank you, Your Honors. If I could just briefly address a few of those points. I think that the most critical thing to understand here is that the case law that opposing counsel is relying on here involves situations with acknowledged employees, contracts and arbitration that are pushed across the table to somebody who is an employee, and they are required to sign that to work in that environment. This is a different context. This is somebody who has entered into a commercial contract with a party that's not even involved in this lawsuit, not named as the employer. There have been questions as to who's paying, and we've heard statements suggesting that maybe SCI is doing something wrong, not named as a defendant, not asserted to be an employer in this context. And so I think it's critical to distinguish those cases where there was an employment relationship at the time of formation. Also, I think it's worth noting that with respect to punitive damages, they're not sought in the complaint. They're not available under the FLSA. They're not available under these Arizona claims that are asserted in this case. So it's a bit of a red herring there. And certainly, they are not typically available within the contractual environment of a commercial contract, which was, again, the context that this contract was entered into. Addressing the points that you've raised as to whether additional issues not identified by the Court should be examined and whether there's a need to remand, on the first one, if you look at the record, I think it's very clear that plaintiffs have offered really nothing at all to suggest that there was any kind of other unconscionability at issue here, particularly on the procedural side. There's no finding whatsoever that there was procedural unconscionability, and so there's no need to look at that. Other issues that counsel has identified, again, where so apparently companies are making somebody enter an arbitration agreement as to, in an employment context, again, that's not the facts here, as well as whether there's a need to remand to the district court for issues that it might need to consider. We don't think there's a need. We do think that the Court has looked at that very closely, and therefore, the Court here can decide that this is actually an enforceable contract and reverse the district court's decision. Thank you, Your Honors. Thank you. The case just argued is submitted for decision.
judges: Siler, Schroeder, Graber